# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## CONCISE SUMMARY OF THE CASE

Pursuant to 3rd Cir. LAR 33.3, counsel are required to file a concise summary of the case within **14** days of the date of docketing of the Notice of Appeal. Total statement is limited to no more than 2 pages, single-spaced. Counsel may utilize this form or attach a 2 page statement encompassing the information required by this form.

SHORT CAPTION:  Lewis Wu, et al. v. Capital One, N.A., et al.
USCA NO.:  14-3719

LOWER COURT or AGENCY and DOCKET NUMBER:
District of New Jersey, Docket No. 12-cv-05000

NAME OF JUDGE:  Hon. Faith S. Hochberg, U.S.D.J.

Specify who is suing whom, for what, and the subject of this action. Identify (1) the nature of the action; (2) the parties to this appeal; (3) the amount in controversy or other relief involved; and (4) the judgment or other action in the lower court or agency from which this action is taken:

> Lewis Wu and Rachel Wu (jointly, the "Wus") filed this action against Chevy Chase Bank, F.S.B. and its successor Capital One, N.A. (jointly, the "Bank") seeking unspecified compensatory damages estimated to be well in excess of $50 million, punitive damages and other relief stemming from the Bank's bad-faith breach of a series of loan agreements. The Wus allege, <u>inter alia</u>, that the Bank improperly (i) declined to fund the second phase of a three phase loan; (ii) misrepresented the relevant funding requirements and the status of the Wus' payments on the loan; (iii) refused to release a lien against a collateralized property; and (iv) reported to various credit agencies that the Wus were in default of their obligations to the Bank. In a July 22, 2014 decision, the District Court granted summary judgment to the Bank on all of the Wus' claims. This appeal follows.

<u>LIST</u> and **ATTACH** a copy of each order, judgment, decision or opinion which is involved in this appeal. If the order(s) or opinion(s) being appealed adopt, affirm, or otherwise refer to the report and recommendation of a magistrate judge or the decision of a bankruptcy judge, the report and recommendation or decision shall also be attached.

> Opinion, July 22, 2014 (Doc. No. 112).
>
> Order, July 22, 2014 (Doc. No. 113).

Provide a short statement of the factual and procedural background, which you consider important to this appeal:

> Pursuant to a series of written agreements (the "Agreements"), the Bank agreed to make a loan to the Wus (the "Loan"). The Loan, which the Wus intended to use to build their 'dream home', was divided into three phases: (1) the "Acquisition Phase" that would fund the purchase of a vacant parcel of land in Alpine, New

Jersey (the "Alpine Property"); (2) the "Construction Phase" that would fund the construction of a new home on the Alpine Property; and (3) the "Permanent Phase" where the balance due for funds advanced during the prior phases would be reduced using the proceeds from the sale of the Wus' residence in Norwood, New Jersey (the "Norwood Property"). At the Acquisition Phase, the Bank advanced approximately $2.5 million to the Wus that, along with the Wus' own funds, were used to purchase the Alpine Property for roughly $3.9 million. The initial $2.5 million advance was secured by a lien on the Alpine Property. Future advances to be made at the Construction Phase were secured by a lien on the Norwood Property.

In September 2007, the Wus obtained the necessary zoning approvals and submitted a construction proposal to the Bank. Based on that proposal, the Bank obtained an "as completed" (i.e., post-construction) appraisal of the Alpine Property in the amount of $7.8 million and another such appraisal for $7.45 million. Although those as completed appraisals were consistent with both parties' expectations, the Bank demanded a $10 million as completed appraisal and refused to fund the Construction Phase. Although the need for a $10 million as completed appraisal was not referenced in, and actually conflicted with, the Agreements, the Bank was beginning to feel the effects of the looming economic crisis and made clear that it would not advance any additional funds unless the Wus verified that they had approximately $3.9 million in assets. The Wus offered to submit a scaled-down construction proposal that would reduce building costs by $1.2 million, but the Bank refused.

Understandably bewildered by the Bank's unexpected (and either bad faith or mistaken) demand for a $10 million as completed appraisal, the Wus sought to extend various deadlines related to the Loan so that they could obtain funding from another source. To that end, Mr. Wu entered into two extension agreements (the "Extensions") with the Bank. Neither of those agreements was signed by Mrs. Wu, the second borrower. However, although (a) the Alpine Property was more than sufficient to secure the funds already advanced to the Wus at the Acquisition Phase and (b) the Bank had declined to fund the Construction Phase, the Bank still refused to release the Lien on the Norwood Property. As a result, the Wus were unable to secure alternative funding.

Identify the issues to be raised on appeal:

(1) Whether the District Court erred in granting summary judgment to the Bank.

(2) Whether the Bank breached the Agreements or otherwise acted improperly by demanding, as a condition precedent to funding the Construction Phase, a $10 million "as completed" appraisal that (a) was not referenced in the Agreements, and (b) contradicts the plain terms of those Agreements.

(3) Whether the Bank breached the Agreements and/or Extensions or otherwise acted improperly by refusing to release the lien on the Norwood Property.

(4) Whether the Extensions, which were not signed by the second borrower, Mrs. Wu, are enforceable.

(5) Whether the Wus' claim for fraud is preempted by federal law.

(6) Whether the Wus are entitled to reformation of the Agreements.

This is to certify that this Concise Summary of the Case was mailed to the Clerk of the U.S. Court of Appeals for the Third Circuit and a copy hereof served to each party or their counsel of record this 24th day of September, 2014.


/s/ Matthew Cono Capozzoli
Matthew Cono Capozzoli

<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEWIS WU AND RACHEL WU., | Civil Case No. 12-5000(FSH) |
| Plaintiff, | **OPINION** |
| v. | Date: July 22, 2014 |
| CAPITAL ONE, N.A., ET. AL., | |
| Defendants. | |

<u>**HOCHBERG, District Judge:**</u>

This matter comes before the Court upon a Motion for Summary Judgment filed by Defendant Chevy Chase (referred to collectively with its successor in interest, Capital One, as "Capital One") pursuant to Fed. R. Civ. P. 56(c). The Court has considered the motion on the written submissions of the parties and without oral argument pursuant to Fed. R. Civ. P. 78.

I.    BACKGROUND

On or about March 1, 2006, Capital One extended a loan to Plaintiffs Lewis Wu and Rachel Wu (collectively referred to as "Wu") for the purpose of acquiring land and constructing a single family home in Alpine, New Jersey. The loan was structured in three phases: (1) acquisition phase, (2) construction phase, and (3) permanent phase. During the acquisition phase, Wu was required to acquire real property in Alpine, New Jersey and finalize and close the loan, which was required to be satisfied in full by 2036. In the loan application, Wu disclosed a monthly income of $103,500.00. Capital One alleges that Wu never disclosed in his application

that his income could vary up to $50,000 per month. Wu claims that Capital One does not cite any obligation for Wu to disclose such information.

The loan was executed on March 1, 2006 ("the closing date") through a variety of documents, including an adjustable rate mortgage note in the amount of $5,795,418.00 (the "note"). The original loan committed to Wu was $4,740,892.00. However, Wu agreed to cross-collateralize property owned by Wu at 368 Crocus Hill, Norwood, New Jersey ("the second property") at a value of $1,054,026.00. As a result, Capital One increased the committed loan amount to $5,795,418.00. Due to this increase, Capital One required Wu to reduce the outstanding mortgage loan by $1,054,026.00 upon entering the permanent phase. Furthermore, Wu was required to inject substantial capital investment into the project.

Capital One estimated the completed project value at $7,091,486.00 with a final loan to value ("LTV") ratio of sixty percent. Wu references the Deed of Trust and alleges that the final loan amount was $4,740,892.00 as the cross-collateralization of the second property was meant to increase the amount temporarily by $1,054,526.00 to provide additional construction funds if and when needed. It is undisputed that Capital One only disbursed $2,495,418.00 at closing. Wu alleges that since Capital One only disbursed $2,495,418.00, Capital One was required to release the second property because the loan amount was below the Deed of Trust amount of $4,740,892.00.

During the first phase, Wu was required to fulfill three acceptance conditions: (1) acquire the Alpine property, (2) select a contractor, and (3) finalize plans and specifications for the project. To proceed past the acquisition phase, Wu had to satisfy all three acceptance conditions within one hundred and eighty days of closing. The loan agreement granted Capital One sole discretion to determine whether the acceptance conditions had been satisfied. Capital One

claims that Wu never satisfied the second and third conditions of selecting a contractor and finalizing plans for the project. Wu was required to submit a construction contract for approval, which fixed a sum for both the contractor's services and each segment of the project with a fixed timetable for completion of the project. Wu argues that any objections to the content or terms of the construction agreement were waived by Capital One when the construction agreement with Mr. Spaguanolo, the contractor, was submitted to Capital One and never rejected.

Regarding the third condition, Capital One acknowledges receiving two appraisals. Capital One accepted the lower valued appraisal of $7,450,000.00 from the Palisades appraisal, which resulted in a LTV ratio of 77.8%, higher than the required 60% LTV ratio. As a result of this higher LTV ratio and the fact that Wu's proposed construction plan was $1,200,000.00 in excess of the amount reserved by the loan for construction, Capital One required that Wu verify assets of $3,873,525.00. Wu asserts that two appraisals were submitted showing the value of the project to be "equal to or exceed" the loan amount and these appraisals were accepted by Capital One, satisfying the third condition. Furthermore, Wu claims that no LTV ratio was set forth in the loan documents, and even if there was an agreed LTV ratio, the ratio was to be based upon the value at the permanent phase, which was to be $4,740,892.00.

Capital One alleges that Wu never verified assets sufficient to overcome the low "as-completed" appraisal and confirm that he could finish the project at the higher construction cost. As a result, Capital One did not move forward with the loan agreement and refused to provide funds to enter into the construction phase. Wu claims that no evidence has been introduced to show that Wu had insufficient funds to meet any construction shortfall, nor has Capital One provided any evidence to show that Capital One made a demand to see such asset verification. Wu claims Capital One breached the loan agreement by failing to fund the construction phase.

Capital One alleges that Wu requested and executed an extension agreement that extended the deadline for completion of the construction phase to October 1, 2008. The extension agreement provided that all of the terms contained in the loan documents continued in full force and effect. Capital One alleges that despite entering the extension agreement, Wu never complied with the terms of the loan documents necessary to proceed to the construction phase. Wu claims that he complied with all requirements but that all deadlines in the extension agreement became moot upon signing a second extension agreement. Capital One alleges that Wu was in default under the loan documents. Wu claims there is no evidence to support this allegation.

The second extension agreement was signed by both parties on October 22, 2008. Capital One alleges that both parties agreed that the loan would not proceed to the construction phase and that Wu was granted a one year extension solely to allow additional time for Wu to repay the $2,495,418.00 owed. Moreover, Capital One alleges that Wu negotiated that upon obtaining replacement financing for the loan and paying off the loan in full, Capital One would waive any prepayment penalty. Capital One asserts that Wu agreed to repay all amounts due and owed in full to Capital One by October 1, 2009 and Wu would make interest only payments during said extension period at the prime rate plus an additional two percent. However, Capital One alleges Wu did not make the required payments. Wu claims that the second extension agreement was entered into under duress and fraud, furthermore Wu asserts that the document is null and void because it was not executed in accordance with its specific terms. Wu alleges that Capital One falsely informed Wu on or about October 15, 2008 that the loan was past its maturity date and therefore Wu was in default, even though the maturity date of the loan was April 1, 2036.

4

On April 8, 2011, Capital One filed a foreclosure complaint against Wu in the Superior Court of New Jersey, Chancery Division, Bergen County. The Court granted Capital One's motion for summary judgment and held that the loan became due and was not paid by Wu and therefore Capital One had the right to foreclose on the Alpine property. The court also held that Wu could not show that Capital One was required to advance funds under the construction phase of the loan, and that Wu's duress claim was not supported by any factual basis. Despite the state court's order[1], Wu contends that during the foreclosure action, Capital One falsely reported to credit services that Wu had defaulted on the terms of the loan. Wu filed the instant Complaint, claiming damages flowing exclusively from Capital One's credit reporting of the foreclosure.

Capital One alleges that prior to closing, Capital One consistently made clear to Wu that the loan was to maintain a sixty percent LTV ratio. Capital One cites the Construction Permanent Lending Loan Builder Worksheet ("Loan Builder Worksheet") as evidence for this allegation. Wu claims that he never signed the Loan Builder Worksheet and it was not part of the loan documents at closing. Furthermore, Wu asserts that Capital One does not provide any evidence that Wu is legally bound by this internal worksheet. Capital One claims that the total mortgage was $5,795,418 and references the note. Capital One alleges that it was only obligated

---

[1] Wu's Complaint is likely barred by issue preclusion, which bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." See Taylor v. Sturgell, 553 U.S. 880 (2008) (citing New Hampshire v. Maine, 532 U.S. 742, 748 (2001)). Furthermore, under the Younger abstention doctrine, absent extraordinary circumstances, federal courts should refrain from taking any action in cases where the federal plaintiff has or had adequate redress available in state proceedings. Younger v. Harris, 401 U.S. 37 (1971); see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). A party wishing to contest in federal court the judgment of a state court must exhaust his state appellate remedies before seeking relief in the District Court. See O'Neill v. City of Philadelphia, 32 F.3d 785, 790 (3d Cir. 1994). Here, Wu does not does not cite any extraordinary circumstances nor does it appear that he exhausted state appellate remedies.

5

to release its security interest in the second property if the loan converted to the permanent phase and Wu reduced the principal balance of the note by $1,054,026.00. This reduction requirement can be found in the Deed of Trust Rider and reflects the value of the second property. Capital One asserts that the construction contract was deficient because it was submitted late, and furthermore the submitted construction contract did not fix the amount to be paid to the contractor, did not fix the fees and costs for each segment of the project, and did not fix the timeframe for completion of the project. Moreover, Capital One alleges that the proposed construction contract estimated construction costs totaling $4,530,845.17 and the loan only reserved $3,300,000.00 for construction costs.

Capital One moved for summary judgment on the following grounds: 1) Wu's claim that Capital One breached the contract by violating the covenant of good faith and fair dealing fails as a matter of law because the covenant of good faith and fair dealing cannot change the express terms of a contract; 2) Wu fails to produce sufficient evidence to establish a claim for fraud and even if Wu did produce evidence to support a fraud claim, Wu's fraud claim is preempted by the Fair Credit Reporting Act ("FCRA"); 3) Wu's claim for credit slander is preempted by the FCRA; and 4) Wu fails to produce sufficient evidence to establish a claim for reformation.

II.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In other words, "summary judgment may be granted only if there exists no genuine issue of material fact

6

that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the nonmoving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. Celotex, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. Id. at 322-23. This burden can be "discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, thus establishing the existence of a "genuine issue of material fact" justifying trial. Miller, 843 F.2d at 143; accord Celotex, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact

7

to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

III.   LEGAL DISCUSSION

A. Breach of Contract

Wu alleges that Capital One breached its obligations under the loan by refusing to fund the construction phase, despite Wu's fulfillment of the acceptance conditions, and by requiring Wu to provide an appraisal value of ten million dollars or an asset verification of almost four million dollars. Wu's Complaint states: "[u]pon satisfaction of the acceptance conditions, [Capital One] was required to make the disbursements for construction of Plaintiff's home on the First Property. The Benchmark Appraisal and Palisades Appraisal satisfied the expected as completed valuation Acceptance Condition as set forth in the Loan Documents." Moreover, by requiring Wu to "acquire an as completed appraisal value of $10 million or a post-Closing Date asset verification of almost $4 million [Capital One] breached its obligations under the Loan."

Secondly, Wu claims that the mortgage lien on the second property was only to secure loan advances in excess of $4,740,893.00 and Capital One breached its obligations by refusing to fund the construction phase and failing to release the lien on the second property. Wu alleges that despite numerous requests Capital One refused to release the lien and as a result Wu was unable to use the value of the second property to secure additional financing to complete the project. Furthermore, the lien on the second property caused the value of the second property to deteriorate.

Capital One argues that the terms of the loan prove that Capital One had the sole discretion to determine whether the Plaintiff met the acceptance conditions and therefore Capital One did not breach the contract by refusing to enter the construction phase. Furthermore, Capital

8

One asserts that nothing in the loan agreement granted Wu the right to enter the construction phase. Moreover, Capital One contends that even accepting Wu's facts as true, Capital One correctly exercised its discretion to deny the loan's entry into the construction phase because Wu indisputably failed at least two of the three acceptance conditions. First, the loan agreement required the construction management agreement to give an exact cost of construction, provide a timeframe for completion of 12 months or less, and allocate $3,300,000.00 for the project. Capital One alleges that Wu submitted a construction management agreement that only offered an *estimated* cost of construction, provided a timeframe for completion of the project *within 18 to 24 months*, and proposed a price for the project of $4,540,845.17. Second, Capital One alleges that Wu failed to obtain the necessary "as-completed" appraisal of the project "equal to or exceeding the Loan amount." Moreover, since the appraisal provided by Wu resulted in a high LTV ratio of 77.8%, Capital One required Wu to verify assets of $3,873,525.00, which Wu failed to do. Furthermore, Capital One asserts that even if Wu had not failed to meet the acceptance conditions and Capital One breached its obligation, Wu explicitly waived any argument by signing the second extension agreement, which refused to allow the loan to enter the construction phase.

Regarding Wu's breach of contract claim on the second property, Capital One asserts that under the clear terms of the mortgage, Capital One had no obligation to release the lien on the second property. Capital One claims that it was only obligated to release the mortgage on the second property if the "Borrower reduced the outstanding principal balance of the Note to $4,740,892 within 90 days of the date of Conversion to the Permanent Phase." Moreover, Capital One claims that the mortgage provides that both properties could be subject to foreclosure should a breach or default occur.

Case Case: 14-05709-FSldoMAdent D00311147632 FilePage/22/14 DatgeFiled: 109/24/2014 2757

Wu argues that Capital One was obligated to enter the construction phase under an implied covenant of good faith and fair dealing. Since Capital One refused to fund the construction phase, violating the covenant good faith and fair dealing, it was impossible for conversion of the loan to the permanent phase to occur, which Capital One alleges was a prerequisite to releasing the lien on the second property. Moreover, Wu claims that assuming Capital One had "sole discretion" in determining whether to enter the construction phase, there is an implied reasonableness requirement on the lender's exercise of such discretion. Furthermore, the implied covenant of good faith and fair dealing prevented Capital One from imposing new requirements on Wu. Wu asserts that Capital One's requirement that Wu provide an as completed appraisal of $10 million or additional assets of almost $4 million dollars were not requirements included in the loan document and are therefore arbitrary and not in good faith. Regarding Capital One's second extension argument, Wu claims that he signed the second extension under duress and therefore it is null and void.

Wu has failed to produce sufficient evidence to establish a claim for duress. See Continental Bank of Pa. v. Barclay Riding Academy, Inc., 93 N.J. 153, 177 (1983) (finding duress requires "an assent by one party to an improper or wrongful demand by another under circumstances in which the former has little choice but to accede to the demand, i.e. to do what he otherwise would not have done."); see also Everst Nat. Ins. Co. v. Suttion, 2008 WL 3833586, at *5 (D.N.J. Aug. 13, 2008) (holding that taking advantage of another's financial difficulty is not duress). Capital One's actions are more analogous to a bank taking advantage of a debtor's financial difficulty, which is not duress.

The Deed of Trust Rider in dispute says "the Lender shall fully release Property #2 from the lien of the Deed of Trust upon the following terms and conditions: (1) Borrower shall reduce

10

the outstanding principal balance of the Note to $4,740,892, (2) within 90 days of the date of Conversion of the Permanent Phase." See Exhibit J. Thus, it appears that the lien on the second property would only be released upon satisfaction of both conditions and therefore Capital One was only required to release the lien on the second property "within 90 days of the date of Conversion of the Permanent Phase." See Newark Pub. Ass'n v. Newark Typographical Union, 22 N.J. 419, 427 (1956) (finding "[i]t is the intent expressed or apparent in the writing that controls.")

Moreover, regarding Wu's claim that Capital One breached the implied covenant of good faith and fair dealing, the doctrine of good faith and fair dealing cannot be used to prohibit a party from doing what is expressly permitted by an agreement. See Armur Realty, LLC v. Banco do Brasil, S.A., 2011 WL 1327422 at *3 (D.N.J. Apr. 5, 2011) (citing Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc., 913 F. Supp 837, 846 (D.N.J. 1995)) (where the terms of the contract are clear, the implied covenant of good faith and fair dealing will not override the contract's express language). Every contract in New Jersey contains an implied covenant of good faith and fair dealing. See Armur, 2011 WL 1327422 at *3 (citing Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 288 (3d Cir. 2000). However, here the contract is not ambiguous and it's clear from the loan documents that Capital One had sole discretion in determining whether Wu satisfied the acceptance conditions before entering the construction phase. Thus, Wu's claim fails because the covenant of good faith and fair dealing cannot prohibit Capital One from exercising discretion expressly permitted by the agreement.

Furthermore, the evidence demonstrates Wu voluntarily contracted and signed the loan agreement with full knowledge of the sole discretion provision, thus it is not enough to say that the contract was unwise or unjust without the implied covenant of good faith and faith dealing,

11

as parties are free to make such agreements. See Armur, 2011 WL 1327422 at *4 (the implied covenant of good faith and fair dealing cannot alter the express terms of the contract). Thus, Defendant is entitled to summary judgment on these claims because Plaintiff failed to produce sufficient evidence to establish a claim for duress, and Plaintiff's good faith and fair dealing claim fails as a matter of law.

B. Fraud and Credit Slander

Wu claims that Capital One misrepresented that the loan required an appraisal of at least $10 million or that Plaintiff had to verify assets equal to or greater than $3,873,525.00 as a condition precedent to the construction phase. Wu alleges that Capital One made these misrepresentations to avoid its obligation under the loan. Furthermore, Wu claims Capital One misrepresented that the loan was in default. As a result, Wu relied upon such misrepresentations and was forced to sign the second extension agreement. Secondly, Wu claims that Capital One knew Wu did not default on the terms of the loan and falsely and maliciously reported to various credit reporting services and other third parties that Wu defaulted. Capital One's false and malicious report negatively affected Wu's ability to borrow money and obtain credit.

Capital One contends that Wu's claims are wholly preempted by the FCRA because Wu's fraud claims are predicated upon Capital One's credit reporting and the FCRA preempts such claims. Capital One contends that the New Jersey District Court follows the plain language approach to reconciling the FCRA and has found that the FCRA bars all "state law claims arising out of actions taken in connection with consumer credit reporting." Hutchinson v. De. Sav. Bank FSB, 410 F. Supp. 2d 374, 384 (D.N.J. 2006).

To prove a fraud claim in New Jersey, a plaintiff must show a defendant committed: (1) a material misrepresentation of a presently existing fact, (2) with knowledge of its falsity, (3)

with the intention that the other party rely thereon, (4) which resulted in reliance by that party to his detriment, and (5) which resulted in damages. See Torisello v. Strobeck, 2013 WL 3286157, at *12 (D.N.J. June 27, 2013); see also Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1182 (3d Cir. 1993) (citing Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619 (1981)). Here, Capital One's representations concerning the loan and Wu's default are interpretations of the loan agreement and therefore are statements of law, which cannot constitute fraud. See PH Chaleyer, Inc. v. Simon, 91 F. Supp. 5, 7 (D.N.J. 1950) (statements of law do not generally constitute fraud); see also Keiff v. Best Buy, 205 N.J. 213, 222 (2011) (construction of a contract is a question of law).

Moreover, even if Wu established the first four elements of fraud, Wu's claim for damages relied on the alleged false credit reporting by Capital One. The FCRA preempts any state law claim that is predicated on the false reporting of credit activity. See Fallas v. Cavalry SPV I, LLC, 2013 WL 1811909, at *9 (D.N.J. April 29, 2013); see also Campbell v. Chase Manhattan Bank, USA, N.A., 2005 WL 1514221 (D.N.J. June 24, 2005)(finding the FCRA eliminates state causes of action relating to the responsibilities of persons who furnish information to consumer reporting agencies). The alleged damages suffered by Wu are not a result of the alleged fraud, but rather the alleged false credit reporting. See Cohen v. Resolution Trust, 108 Fed. Appx. 287, 290-91 (3d Cir. 2004) (denying plaintiff's fraud claims relating to defendant's freezing of plaintiff's assets because plaintiff's could not prove theory that fraud caused damage to credit or credit declinations). Here, Capital One is a bank with responsibilities that include furnishing information to consumer reporting agencies. Furthermore, Wu's damages for the alleged fraud are based solely upon Capital One's allegedly false credit reporting. Thus, Defendant is entitled to summary judgment on these claims because Plaintiff failed to provide

13

sufficient evidence to establish an element of a claim for fraud and his claims are preempted by the FCRA.

C. Reformation of Mortgage

Wu claims that under the Deed of Trust Rider, Capital One was obligated to release the second property from the mortgage within ninety days of: (1) entering the permanent phase, and (2) the balance of the outstanding principal owed under the loan being reduced to $4,740,893.00. Under the terms of the second extension agreement, the loan could never enter the permanent phase, thus Wu asserts that it was impossible for the mortgage on the second property to be satisfied. Furthermore, Wu claims that upon entering the second extension agreement, Capital One acknowledged that the outstanding balance of the loan was significantly less than $4,740,893.00, and therefore the mortgage on the second property should have been discharged.

Capital One asserts that Wu's reformation claim fails because Wu did not set forth any evidence showing that the terms of the mortgage were the product of fraud or mistake. "Absent fraud, accident or mistake, courts will not grant the high [equitable] remedy of reformation." Alexander v. CIGNA Corp., 991 F. Supp. 427, 442 (D.N.J. 1998). Moreover, reformation is permissible only in cases where there has been: (1) a unilateral mistake accompanied by fraud, or (2) a mutual mistake with regard to the terms of the instrument. See Alexander, 991 F. Supp at 442. Capital One alleges that Wu "cannot show by clear and convincing evidence that there was any mistake at all, let alone a mutual mistake by all Parties which would entitle them to reform the Mortgage."

Defendant is entitled to summary judgment on this claim because Plaintiff has failed to produce sufficient evidence to establish an element of a claim for reformation. See Alexander v. CIGNA Corp., 991 F. Supp. 427, 442 (D.N.J. 1998) aff'd, 172 F.3d 859 (3d Cir. 1998) (citing

14

Fleming Companies, Inc. v. Thriftway Medford Lakes, Inc., 913 F.Supp. 837, 843 (D.N.J.1995)) ("[r]eformation based on a unilateral mistake accompanied by fraud requires a plaintiff to show by clear and convincing evidence that (1) the mistake was so great that to enforce the contract would be unconscionable; (2) the mistake must relate to a material feature of the contract; (3) the plaintiffs exercised reasonable care; and (4) the relief afforded must not seriously prejudice the opposing party").

IV. CONCLUSION

For the reasons set forth above, and after careful review of the record in its entirety, the Court finds that Defendants are entitled to Summary Judgment on all of Plaintiff's claims.

                                       s/ Faith S. Hochberg
                                       Hon. Faith S. Hochberg, U.S.D.J.

**NOT FOR PUBLICATION** **CLOSED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEWIS WU AND RACHEL WU., <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL ONE, N.A., ET. AL., <br><br> Defendants. | Civil Case No. 12-5000(FSH) <br><br> ORDER <br><br> Date: July 22, 2014 |

**HOCHBERG, District Judge:**

    For the reasons stated in the Opinion filed herewith,

    **IT IS THEREFORE** on this 22nd day of July, 2014, hereby

    **ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** [docket # 96]; and it is further

    **ORDERED** that Defendants' Motions in Limine are deemed **MOOT** [docket #s 97, 98, 99]; and it is further

    **ORDERED** that this case is **CLOSED**.

                                                            s/ Faith S. Hochberg        
                                                             Hon. Faith S. Hochberg, U.S.D.J.